UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCO GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 8578 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| WARDEN MARCUS HARDY, ASSISTANT ) | |
| WARDEN EDWARDS, MAJOR KEVIN ) | |
| R. LASKEY, KAREN RABIDEAU, ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, DR. P. GHOSH, and ) | |
| DR. SALEH OBAISI, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Francisco Gonzalez, an inmate at Stateville Correctional Center ("Stateville"), sues Defendants Dr. Parthasarathi Ghosh and Dr. Saleh Obaisi (collectively, "Defendants") for failure to provide adequate medical care in violation of 42 U.S.C. § 1983,[1] specifically contending that Dr. Ghosh and Dr. Obaisi, former and current Medical Directors at Stateville, failed to provide him with orthopedic shoes and approve his request for assignment to a lower tier cell and lower bunk in deliberate indifference to a serious medical condition with his right foot. Defendants have moved for summary judgment [192] on all of Gonzalez's claims. Because Gonzalez cannot demonstrate that Defendants acted with deliberate indifference to his foot pain, the motion for summary judgment is granted.

---

[1] The other Defendants named in the Fourth Amended Complaint have been voluntarily dismissed. *See* Docs. 174, 175, 201.

1

## BACKGROUND[2]

Gonzalez has been an inmate at Stateville since June 22, 2000. Dr. Obaisi is currently the Medical Director at Stateville. Dr. Ghosh was the Medical Director at Stateville from at least 2004 until his retirement on March 31, 2011.

Gonzalez injured his right ankle on March 31, 1995 in a work accident. After trying to manage his pain with treatments and injections, Gonzalez underwent right ankle ligament reconstruction at Loyola on February 19, 1997. After the surgery, Gonzalez received sixteen weeks of physical therapy. An X-ray revealed a huge bony spur near Gonzalez's right heel that was not a result of the March 1995 injury. After the completion of physical therapy, Gonzalez's doctor recommended a custom made orthotic device and fitted Gonzalez for a special shoe.

Gonzalez was arrested in April 1999. Following his conviction and sentencing, Stateville did not allow Gonzalez to bring his custom orthotic shoes to prison.

### A. The Shoes Requests

Stateville had a Podiatry Clinic from 2003 to 2006. Gonzalez was seen by P. Vohra, a podiatrist, on January 26, 2004 and February 19, 2004. Gonzalez reported to Dr. Vohra about the accident, the 1997 surgery, and that he had pain in his right ankle. Gonzalez told Dr. Vohra

---

[2] It is not clear whether the Joint Statement of Undisputed Material Facts [194] submitted with Defendants' Motion for Summary Judgment was created by Gonzalez and the Defendants working together, per this Court's Case Procedures on Summary Judgment Practice. Gonzalez has included his own Statement of Facts in his Response, attaching exhibits, most of which are also attached to the Joint Statement. Although the non-moving may include facts in his response that he contends are disputed in order to demonstrate that there is a genuine issue of material fact, most of these "disputed facts" are portions of Gonzalez's deposition testimony or citations to certain pages of the medical records and do not create real factual disputes. However, because this case was filed in 2011 and in the interests of justice and judicial efficiency, the Court will not strike the Parties' submissions, but will consider all factual statements in the Joint Statement and Gonzalez's Response that are supported by the record evidence and are relevant to the issues. The Parties' attorneys are warned that the Local Rules and this Court's procedures are not mere technicalities and failure to abide by them in the future will result in the Court striking briefs, disregarding statements of fact, deeming statements of fact admitted, denying summary judgment, and/or imposing sanctions.

the boots issued by the prison rubbed against his surgical site and gave him pain.[3] On June 14, 2004, Dr. Vohra again examined Gonzalez and recommended an extra depth shoe, size 9-1/2 D, but noted that Gonzalez did not have any deformity in his foot. Dr. Ghosh approved the recommendation.[4] Gonzalez received these shoes on April 12, 2005.

On October 2, 2006, again Gonzalez obtained a recommendation that he receive special shoes with extra depth, size 9-1/2 D. Dr. Ghosh approved this recommendation. Gonzalez received this pair of shoes in approximately November 2006.

In October 2010, Dr. Ghosh provided Gonzalez a prescription order for new shoes. Dr. Ghosh testified that Gonzalez never asked him for a new pair of shoes between 2006 and October 2010. Gonzalez submitted an affidavit with his summary judgment papers stating that he spoke with Dr. Ghosh "multiple times" between May 2007 and October 27, 2010 to request new shoes. Doc. 199, Ex. U. However, at his deposition Gonzalez testified that Dr. Ghosh "always gave me the shoes." Stmt. ¶ 32.

Since 2010, Gonzalez has been given shoes and work boots, but he refuses to wear those shoes because the shoes do not provide enough cushion or support and "they're not appropriate for my problem." *Id.* ¶ 33. The Stateville commissary sells tennis shoes and boots. Gonzalez purchased a pair of tennis shoes at the beginning of his incarceration. However, a doctor in 2004 told him not to use them anymore and Gonzalez has not purchased any tennis shoes since that time.

Gonzalez first spoke to Dr. Obaisi about the special shoes in October 2012. Gonzalez states that he told Dr. Obaisi that he was in "extreme pain" in his right foot and that is why he

---

[3] Dr. Obasi testified that Stateville no longer issues those boots.

needed the special orthopedic shoes. Doc. 199, Ex. U. Dr. Obaisi testified that Gonzalez never complained to him of pain in his feet, and that if Gonzalez had complained, that would have made a difference. Gonzalez testified that Dr. Obaisi told him that he knew Gonzalez needed the special shoes.

At the October 2012 appointment, Dr. Obaisi told Gonzalez and noted in the medical records that Gonzalez's shoes seemed to be in good condition. Dr. Obaisi has never prescribed special orthopedic shoes for Gonzalez and does not intend to prescribe them because, in his medical opinion, Gonzalez does not need a new pair of orthopedic shoes. Dr. Obaisi was not aware that prior physicians and the prior medical director recommended and requested special shoes for Gonzalez. Dr. Obaisi does not prescribe orthotic shoes for inmates—if an inmate needs special shoes because of a deformity in his foot, Dr. Obaisi would refer the issue to an orthotic specialist who would come to Stateville to conduct an examination and make a recommendation. After an initial consultation with the doctor, an inmate would receive the shoes in an average of two months. Dr. Obaisi does not deal with the vendor who makes or supplies orthotic shoes for Stateville.

Dr. Obaisi has seen Gonzalez for multiple other complaints, including: abdominal pain on August 4, 2012—Dr. Obaisi referred Gonzalez to an outside facility for an MRI; issues related to frequency of urination on September 11, 2012—Dr. Obaisi performed testing on Gonzalez and changed his prostate medication; GI issues and rib pain on January 16, 2013—Dr. Obaisi ordered an X-ray, which was interpreted by a radiologist; complaints of pain in abdomen and pelvis on March 9, 2013—Dr. Obaisi referred Gonzalez to an outside facility for a CT scan.

---

[4] Dr. Vohra's recommendations, however, could have been implemented even without Dr. Ghosh's review or signature.

As of the date of his deposition, Gonzalez was wearing the shoes provided to him in 2006. Gonzalez states that these shoes do not provide cushion to reduce his pain and that the shoes are causing him a lot of pain because they are no longer even. Gonzalez wants orthopedic shoes so that "there's less pain." *Id.* ¶ 20.

### B. The Low Gallery/Low Bunk Requests

Recognizing that Gonzalez's ankle condition was "chronic" in March 2008, Dr. Ghosh issued Gonzalez a seven month permit for a low gallery/low bunk assignment. *Id.* ¶ 36. Dr. Ghosh issued Gonzalez a number of low gallery/low bunk permits from March 2008 through June 30, 2010 and from November 2010 until Dr. Ghosh left Stateville. Gonzalez did not have a low gallery permit between June 30, 2010 and November 23, 2010, and was moved from the second floor to the fourth floor. Permanent permits for low gallery or low bunk assignments are not encouraged at Stateville because there is always the potential that someone with a more serious condition may require the accommodation. Gonzalez states that he spoke with Dr. Ghosh personally between the dates of July 1, 2010 to November 23, 2010 to renew the low gallery/low bunk permit. A nurse saw Gonzalez in October 2010 and referred him to Dr. Ghosh for a consultation regarding the request. Stateville offered Gonzalez a lower gallery assignment in November 2010, but he refused it because, in his opinion, that area of the prison was dangerous. In March 2012, Stateville moved him to a low gallery/low bunk assignment. Gonzalez has had low gallery/low bunk permit for the last two years. Dr. Obaisi has authorized multiple low gallery/low bunk permits for Gonzalez, although at his deposition he could not remember why.

On April 17, 2004, Gonzalez wrote a letter to Dr. Ghosh requesting a low bunk assignment. Gonzalez has only slept on a top bunk for two months out of his fourteen years in Stateville and has not had a top bunk since 2004.

With the assistance of another inmate, Gonzalez filed one grievance related to the shoes and permits in August 2010.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

Defendants move for summary judgment on the grounds that Gonzalez has provided no evidence that he suffers from an objectively serious medical condition and, even if he had such a condition, there is no evidence that Dr. Ghosh and Dr. Obaisi were deliberately indifferent to his medical needs. Gonzalez responds that Dr. Ghosh and Dr. Obaisi ignored his requests for shoes and a low gallery/low bunk and were therefore deliberately indifferent to his serious foot pain.

A claim of deliberate indifference includes both an objective and subjective element. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). "[T]he objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The subjective element requires that the prison official act with a sufficiently culpable state of mind—"something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105–106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quotation marks omitted). Medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir. 2005).

However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official "actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if

the fact of that risk is obvious. *Id*. The Court examines the totality of the medical care provided and will find that isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez*, 111 F.3d at 1374–75.

    **A.**    **The Shoes Requests**

Defendants argue that Gonzalez has failed to demonstrate that his foot pain is a serious medical condition. A serious medical condition is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. *See Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008) (citing *Gutierrez*, 111 F.3d at 1373). A condition is also objectively serious if a "failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 522 (quotation marks omitted).

Gonzalez had an ankle injury in 1995 that required surgery and extensive physical therapy in 1997. At that time, he had a prescription for special orthotic shoes. When he arrived at the Stateville Podiatry Clinic in 2004, Gonzalez complained of pain in his right ankle from the state-issued boots rubbing against his surgical site. At that time, Dr. Vohra, a podiatrist, recommended (and Dr. Ghosh approved) an extra-depth shoe for Gonzalez. Dr. Vohra noted that Gonzalez did not have any deformity in his foot and did not indicate a medical reason for this recommendation. Dr. Vohra recommended Gonzalez receive extra-depth shoes again in October 2, 2006. Dr. Ghosh approved special shoes for Gonzalez again in 2010. In October 2012, Gonzalez complained of pain in his right foot to Dr. Obaisi and requested special orthopedic shoes. Dr. Obaisi disputes that Gonzalez complained of pain, although he admits that Gonzalez asked for new shoes, that he examined Gonzalez's shoes, and noted that they seemed to be in

8

good condition. Although Gonzalez testifies that Dr. Obaisi told him that he knew Gonzalez needed the special shoes, Dr. Obaisi testified that he does not intend to prescribe special shoes for Gonzalez because, in his medical opinion, he does not need them. Gonzalez has refused to wear any of the shoes or work boots provided to him because he does not consider them to have adequate support or be appropriate to his needs. Gonzalez also points to the X-ray report of a "huge bony spur" near his right ankle from 1995 when he injured his ankle; however, Gonzalez never complained of this problem to any Stateville medical officer and he has not provided any argument or testimony that this spur is the source of his ankle pain.

Several other courts in this district have recently determined that foot pain may be considered a serious medical condition sufficient to allow a plaintiff to proceed on summary judgment. *See Smith v. Perez*, No. 13 C 3490, 2015 WL 5821442, at *2 (N.D. Ill. Oct. 2, 2015) (finding whether plaintiff's complaints of "excruciating pain in his feet" was a "sufficiently serious medical condition for the purposes of a deliberate indifference claim" to be a jury question); *Quinn v. Hardy*, No. 11-cv-1173, 2015 WL 1119409, at *4 (N.D. Ill. Mar. 10, 2015) (severe foot pain is a sufficiently serious medical condition). Reading the facts in the light most favorable to Gonzalez, as we must at this point in the proceedings, the Court cannot say that his foot condition is not a serious medical condition. *See Hayes*, 546 F.3d at 523 (finding a serious medical condition based in part on self-reporting of pain).

However, even considering the complaints of right foot pain and the existence of the bony spur as creating a serious medical condition, Gonzalez has not shown Dr. Ghosh and Dr. Obaisi acted with "something akin to criminal recklessness" in their treatment of his complaints. *See Norfleet*, 439 F.3d at 397. Rather, Dr. Ghosh approved Gonzalez's extra-depth shoes when

9

requested in 2005, 2006, and 2010.  In fact, Gonzalez testified at his deposition that Dr. Ghosh "always gave me the shoes."  Stmt. ¶ 32.  Gonzalez's summary judgment affidavit directly contradicts this testimony, asserting that Gonzalez requested new shoes from Dr. Ghosh multiple times between May 2007 and October 27, 2010 and did not receive them; however, a plaintiff cannot create an issue of material fact in summary judgment by providing an affidavit that contradicts his prior sworn testimony.  *Harmon v. Gordon*, 712 F.3d 1044, 1051–52 (7th Cir. 2013) ("[T]he law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.") (citing *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)).  Therefore, for the purposes of summary judgment, it is undisputed that Dr. Ghosh approved all of Gonzalez's shoe requests.

Dr. Obaisi also considered Gonzalez's request for new shoes when Gonzalez mentioned it at the appointment in October 2012, and determined in his medical opinion, that new shoes were not necessary.  Unlike in *Quinn v. Hardy*, where the court found a fact issue as to whether the doctor who was aware that the plaintiff needed orthopedic shoes, prescribed orthopedic shoes, and knew those shoes had not been delivered was "deliberately indifferent," 2015 WL 1119409, at *7, Gonzalez has not shown that Dr. Ghosh and Dr. Obaisi knew of, but disregarded, his pain and need for shoes.  Gonzalez has presented no evidence that Dr. Ghosh or Dr. Obaisi knew about the bony spur.[5]  And Dr. Obaisi testified that he was not aware that prior physicians

---

[5] Gonzalez's summary judgment affidavit states: "Dr. Obaisi is aware that I have a bony spur on my right foot." Doc. 199, Ex. U.  Gonzalez cannot use his own testimony about Dr. Obaisi's knowledge to prove Dr. Obaisi had such knowledge.  *See* Fed. R. Evid. 803(3) (excepting from the hearsay rules "[a] statement of the *declarant's* then-existing state of mind (such as motive, intent, or plan) . . . , but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will") (emphasis added).  Gonzalez's opinion as to Dr. Obaisi's state of mind is irrelevant.  Fed. R. Evid. 401 ("Evidence if relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the facts is of consequence in determining the action.").  The Court considers only admissible evidence on summary

had recommended special shoes for Gonzalez until he was shown those medical records at his deposition. Rather, each doctor responded within his medical judgment to Gonzalez's reports of pain—one approving the shoes in 2005, 2006, and 2010, the other refusing to order the shoes in 2012.

Dr. Obaisi's determination that Gonzalez did not need a new set of shoes cannot be said to be subjectively indifferent to Gonzalez's medical needs. *See Steele v. Choi*, 82 F.3d 175, 178–79 (7th Cir. 1996) (improper diagnosis of brain hemorrhage possibly medical malpractice, but not subjective indifference). Along the same lines, Dr. Obaisi's refusal to give Gonzalez new shoes was also not a substantial departure from accepted professional judgment that would allow an inference of deliberate indifference. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) ("Deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." (alterations omitted)). Gonzalez further argues that he complained to Dr. Obaisi on multiple occasions of foot pain, and it is therefore "a common sense deduction" that prescribing orthotic shoes would relive this pain. Doc. 199 at 9. However, Dr. Obaisi considered and rejected Gonzalez's request for new shoes—Gonzalez cannot show that Dr. Obaisi did not base his opinion on his medical judgment. *See Holloway v. Del. County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) ("For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is such a substantial departure from accepted professional

---

judgment, therefore this cannot create a material issue of fact. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment.").

judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." (internal quotation marks omitted)).

Gonzalez testified that he wanted the shoes to reduce his foot pain. Even if Dr. Obaisi told Gonzalez that he knew Gonzalez needed the shoes, something that Dr. Obaisi denies, or if the jurors could infer from Dr. Obaisi's renewal of the low gallery/low bunk permit that he knew of and ignored Gonzalez's foot pain, a leap that is not supported by the evidence, Gonzalez has not shown Dr. Obaisi knew that "a substantial risk of serious harm" existed for Gonzalez if he did not get those shoes. *See Steele*, 82 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 129 L. Ed. 2d 811 (1994)).

Gonzalez argues that a delay in providing medical treatment that unnecessarily prolongs an inmate's pain can be deliberate indifference, citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (reversing dismissal of deliberate indifference claim at motion to dismiss stage), and that may be true. However, a delay in treatment claim requires verifying medical evidence to proceed beyond summary judgment. *See Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) ("[T]he action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay."). Gonzalez has provided only his opinion that new shoes would give him less pain. He does not report any worsened condition or increased pain and has not provided any medical evidence at all on this issue. *Cf. Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (although plaintiff did not present expert testimony stating that his condition worsened, he presented medical records "indicating that he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist;" the plaintiff "later underwent painful nose surgery.").

12

A prisoner is not entitled to the health care that he desires. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient."); *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 513 (7th Cir. 1999) (affirming summary judgment on prisoner's claim that the doctor "was deliberately indifferent for not doing exactly what [the plaintiff] wanted"). Gonzalez has not provided any evidence to show that Dr. Ghosh and Dr. Obaisi's response to his complaints of foot pain were even negligent, much less so reckless that they rise to the level of a constitutional violation. *See Walkers v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) ("No reasonable jury could conclude based on [plaintiff's] personal testimony that his medical treatment was inadequate without any competent evidence in the record to support these claims.").

Because Gonzalez has not shown a material issue of fact on the question of whether Dr. Ghosh and Dr. Obaisi were deliberately indifferent to his foot pain, summary judgment is granted for Defendants.

### B. The Low Gallery/Low Bunk Requests

For the same reasons discussed above, Defendants seek summary judgment on Gonzalez's claim that Dr. Ghosh and Dr. Obaisi were deliberately indifferent to his medical needs in providing low gallery/low bunk permits.

Gonzalez does not meaningfully challenge the concession in the Joint Statement of Facts that he has slept on a top bunk for only two months of out of his fourteen years in Stateville and has never had a top bunk since requesting a low bunk from Dr. Ghosh in 2004. That Dr. Ghosh provided him the accommodation in 2004 and Gonzalez has consistently had a low bunk since that time cannot support a claim of deliberate indifference on this issue.

The facts also demonstrate that Dr. Ghosh and Dr. Obaisi approved multiple low gallery requests from Gonzalez and that the only time Gonzalez did not have a low gallery permit was for five months in 2010 (from July to November). In October 2010, Gonzalez saw a nurse to request another low gallery permit. She referred Gonzalez to Dr. Ghosh, who renewed his permit in November 2010. Stateville offered Gonzalez a low gallery assignment in November 2010, but refused because he considered that area of the prison to be too dangerous. In March 2012, Gonzalez moved to a low gallery.

Gonzalez argues that he approached Dr. Ghosh during the five month period in 2010 and that Dr. Ghosh delayed renewing his permit, thereby increasing his pain and demonstrating deliberate indifference. However, the cited facts do not support an inference that Dr. Ghosh delayed providing the permit renewal. Rather, Gonzalez testified that he spoke with Dr. Ghosh around November 2010 about a permit renewal and Dr. Ghosh renewed the permit. Doc. 199, Ex. A at 36. Gonzalez's summary judgment affidavit states only that he spoke to Dr. Ghosh during the period of July 1, 2010 to November 23, 2010 about the renewal—it does not state that Gonzalez spoke with Dr. Ghosh multiple times during this period or that Dr. Ghosh refused to renew the permit in a timely fashion. *Compare* Doc. 199, Ex. U at ¶ 2 ("Between the dates of July 1, 2010 to November 23, 2010, I personally spoke to Dr. Ghosh asking him to renew my permit to live on a low gallery and low bunk housing assignment in the prison."), *with id.* at ¶ 1 ("Between the dates of May of 2007 to October 27, of 2010 [*sic*], I personally spoke to Dr. Ghosh multiple times asking him for a new pair of orthopedic shoes."). Gonzalez has not presented any evidence that when he requested a renewal of his low gallery permit, it was denied.

Because Gonzalez has presented no evidence to support his claim of deliberate indifference to the low gallery/low bunk requests, summary judgment on this claim is also granted for Defendants. *See Williams v. Meier*, No. 11-cv-407-wmc, 2013 WL 5409058, at *10 (W.D. Wisc. Sept. 25, 2013) (finding no evidence that doctor who refused request for lower bunk had sufficient knowledge of a potentially serious risk to be deliberately indifferent to that risk).

## CONCLUSION

Because Gonzalez has not presented any evidence to show Dr. Ghosh and Dr. Obaisi were deliberately indifferent to his medical needs, Defendants' motion for summary judgment [192] is granted. Judgment is entered for Defendants Ghosh and Obaisi. The case is terminated.

Dated: October 27, 2015

SARA L. ELLIS
United States District Judge